# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-20576

United States Court of Appeals
Fifth Circuit

**FILED**

March 19, 2020

Lyle W. Cayce
Clerk

NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY, LIMITED; NORTH CYPRESS MEDICAL CENTER OPERATING COMPANY GP, L.L.C.,

>  Plaintiffs - Appellants

v.

CIGNA HEALTHCARE; CONNECTICUT GENERAL LIFE INSURANCE COMPANY; CIGNA HEALTHCARE OF TEXAS, INCORPORATED,

>  Defendants - Appellees

Appeals from the United States District Court
for the Southern District of Texas

Before KING, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

North Cypress Medical Center Operating Co., Ltd., and North Cypress Medical Center Operating Co. GP, L.L.C., appeal the adverse judgment rendered by the district court on ERISA claims assigned by Cigna-insured patients. They contend that substantively and procedurally flawed insurer decisions resulted in underpayment of more than $40 million in benefit claims. Because the district court correctly applied this court's decision in *Connecticut General Life Insurance Co. v. Humble Surgical Hospital, L.L.C.*, which construed an identical provision, 878 F.3d 478, 485 (5th Cir. 2017), North Cypress's arguments cannot be sustained. We AFFIRM.

No. 18-20576

## BACKGROUND

In 2007, the Plaintiff-Appellants (collectively, "North Cypress") opened a general acute care hospital. With the help of a third-party consultant, North Cypress developed a master schedule of fees for each service. When North Cypress provided services covered by a patient's insurance, it reported the scheduled fee for the services to the patient's insurance company. The insurance company was expected to pay most of the fee, while the patient, still nominally responsible for the entire cost, would be billed for a smaller percentage as coinsurance and possibly a deductible.

North Cypress decided to give its patients a break on coinsurance. The hospital offered to limit the patient's coinsurance obligation if the patient paid a certain amount of what he owed within 120 days. To calculate this "Prompt Pay Discount," North Cypress started from Medicare's reimbursement schedule, which provided fees far lower than North Cypress's master schedule for non-Medicare patients. North Cypress multiplied the Medicare fee by 125 percent, and it then applied the patient's in-network coinsurance percentage— even if North Cypress was not in-network for the patient's insurance company.[1] The resulting balances significantly reduced out-of-network patients' coinsurance obligations, but they also generated substantial revenue for North Cypress without incurring collection expenses.[2]

---

[1] According to the district court, in-network coinsurance obligations are typically 20% of the covered service, while patients must pay 40% of fees to out-of-network providers.

[2] For example, if the typical ("Chargemaster") cost of care were $10,000:

When applying the prompt pay discount, rather than billing the patient $4,000 North Cypress would calculate a much lower amount. First, instead of starting with the total Chargemaster cost of care, North Cypress would start with a lower base rate—125% of the Medicare rate for the services provided. For example, instead of $10,000, the base rate might be $2,500. Then instead of multiplying this reduced base rate by 40%, North [Cypress] would multiply it by 20%—the patient's *in-network* coinsurance rate. As a result of the discount,

No. 18-20576

The Defendant-Appellees (collectively, "Cigna") administer, and sometimes fund, health insurance plans. All the plans at issue in this case provide Cigna with discretionary authority to interpret the plans, and all "specifically exclude" from coverage:

> Charges for which you are not obligated to pay or for which you are not billed or would not have been billed except that you were covered under this Agreement.[3]

Cigna interpreted this language as its refusal to countenance a provider's "fee forgiveness," on the ground that such practices desensitize insureds to the higher cost of out-of-network medical care.

Throughout the period relevant to this lawsuit, Cigna insured North Cypress patients at out-of-network rates.[4] In a 2007 letter when it opened for business, North Cypress acknowledged its out-of-network status but noted that Cigna members would still be eligible for its Prompt Pay Discount. North Cypress did not explain how it calculated that discount, and Cigna replied with concern that North Cypress proposed to engage in fee-forgiveness. Cigna emphasized that it would recognize charges only insofar as beneficiaries were legally liable for them, adding that it might delay or deny payment until it had

---

> the patient in this example would be billed only $500 rather than $4,000. In contrast, Cigna's responsibility was unchanged; North Cypress would file a claim form reporting its total Chargemaster cost to Cigna and expect the insurer to pay its 60% share—$6,000.

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare* (*North Cypress I*), 781 F.3d 182, 188 (5th Cir. 2015).

[3] The district court found that the plans in this case include this provision. On appeal, North Cypress states in a footnote that "Cigna *never* established which plans contained the Exclusion," but North Cypress says nothing more on this point in either brief. "Failure of an appellant to properly argue or present issues in an appellate brief renders those issues abandoned." *United States v. Beaumont*, 972 F.2d 553, 563 (5th Cir. 1992). The district court's factual finding is, therefore, undisputed.

[4] In 2012, North Cypress became an in-network provider for Cigna, ending this controversy.

No. 18-20576

"assurance that the charges shown on claim forms are your actual charges to the patient and that patients will be required to pay amounts such as out-of-network co-insurance and deductibles." North Cypress replied that the Prompt Pay Discount "does not waive any portion of North Cypress's charges for a service." North Cypress did not explain to Cigna that the Prompt Pay Discount was based on an entirely different fee schedule, the assumption of an in-network coinsurance rate, and the thus-conditioned waiver of Cigna's usual reimbursement requirements.

Until early November 2008, Cigna accepted claims proffered by North Cypress, paying approximately 80% of the hospital's bill based on its master fee schedule. Prompted by complaints from its insureds about extraordinary out-of-network payments, Cigna became suspicious of fee forgiveness by North Cypress and launched an investigation. It sent 34 survey letters to Cigna plan members and received 19 responses. It received a range of answers and concluded that North Cypress generally collected $100 from a Cigna-insured patient, if anything.

Consequently, Cigna decided to change its payment process for North Cypress claims and notified the hospital of its new "Fee-Forgiving Protocol." Going forward, it would assume that North Cypress charged patients $100, and based on this coinsurance payment, it would calculate the cost of the procedure. Then, it would pay what the patient's plan dictated for a procedure of that cost at an out-of-network hospital. This assumption would be revoked if the beneficiary (or assignee) showed that the amount submitted was actually the amount charged and that the Cigna participant had paid the applicable out-of-network coinsurance amount.

North Cypress protested implementation of the Protocol and, as its patients' assignee, appealed claims in Cigna's multi-level appeals process. Consistently, North Cypress's first appeal would be met with a letter from

No. 18-20576

Cigna conveying that the original decision was based on Cigna's policy of not paying charges that patients are not legally obliged to pay. The letter would explain the process for a second appeal. According to the letter, appeals were to be decided by a unit separate from the unit involved in the initial decision. The district court found that Cigna adjusted some claims in favor of North Cypress during the appeal process, but North Cypress refused to complete the appeals process for the vast majority of its claims.

In 2009, North Cypress sued in federal court seeking relief for claimed underpayments of insurance by Cigna under state law, RICO, and ERISA. The district court ruled, in relevant part, that North Cypress lacked standing to pursue ERISA claims.[5] On appeal, this court reversed that ruling and remanded for consideration of the ERISA claims. *North Cypress I*, 781 F.3d at 192–95.

After further discovery, the district court responded to cross-motions for summary judgment by dismissing North Cypress's ERISA § 502(a)(3) claims for breach of fiduciary duty, its ERISA § 503 claims for failure to provide a full and fair review of initial benefit decisions, its ERISA § 502(c)(1)(B) claims for refusal to provide requested plan documents, and its state contract law claims. The court also deemed Cigna's affirmative defense of recoupment to be waived and denied North Cypress's request for attorney's fees. Finally, the court narrowed North Cypress's remaining claims for patient benefits under ERISA § 502(a)(1)(B) to those for which it had exhausted administrative remedies, ruling that North Cypress lacked a futility excuse for non-exhaustion.

---

[5] The district court also dismissed appellants' RICO claims, state insurance law claims, and state contract law claims, granted a motion to unseal, and dismissed appellees' ERISA counterclaims. In *North Cypress I*, this court upheld those rulings, except for dismissal of the state contract law claims, which were remanded. 781 F.3d at 197–207.

No. 18-20576

An eight-day bench trial followed. At trial, the court refused to reconsider its ruling on exhaustion. Also, the court dismissed 395 of the exhausted claims that had not been subjected to the challenged Protocol and had therefore been reimbursed satisfactorily. As to the remaining 180 discretionary decisions made by Cigna regarding benefit claims subject to the Protocol,[6] the court found no abuse of discretion and thus no violation of ERISA § 502(a)(1)(B). The court rejected North Cypress's other claims. The hospital timely appealed.

## STANDARD OF REVIEW

"On appeal from a bench trial, this court review[s] the factual findings of the trial court for clear error and conclusions of law *de novo.*" *Humble*, 878 F.3d at 483 (alteration in original) (quoting *George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 352 (5th Cir. 2015)). In reviewing de novo an administrator's ERISA plan interpretation, we apply the same standard as is appropriate for the district court. *Id.* "[W]hen an administrator has discretionary authority with respect to the decision at issue, the standard of review should be one of abuse of discretion." *Id.* (alteration in original) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 295 (5th Cir. 1999) (en banc), *overruled on other grounds by Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S. Ct. 2343 (2008)).

"This court reviews a grant of summary judgment *de novo,* applying the same standards as the district court. We therefore affirm the district court's grant of summary judgment 'if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute [as] to any material fact and the movant is entitled to judgment as a matter of law.'"

---

[6] North Cypress does not dispute that Cigna had discretionary authority to determine eligibility for benefits in this case.

*LifeCare Mgmt. Servs. L.L.C. v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 840–41 (5th Cir. 2013) (alteration in original) (citation omitted) (quoting *U.S. ex. rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 326 (5th Cir. 2011)).

Finally, this court reviews a denial of attorney's fees for abuse of discretion, reviewing factual findings for clear error and legal conclusions de novo. *See Humble*, 878 F.3d at 488; *see also Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001).

## DISCUSSION

On appeal, North Cypress raises numerous issues, most of which are connected to the impact of our first appellate decision in this case and intervening case law. Thus, North Cypress contends the district court violated the law of the case by not considering the legal correctness of Cigna's plan interpretation. Second, in contravention of our earlier opinion, the court failed to find that Cigna had conflicts of interest, lacked good faith, and abused its discretion in denying claims under the hospital's Prompt Payment Discount policy. Next, the district court erred in relying on *Connecticut General Life Insurance Co. v. Humble Surgical Hospital, L.L.C.*, the intervening decision of this court that interpreted the same language at issue in Cigna's policy here. Moving on, North Cypress alleges that futility excused its failure to exhaust administrative remedies for the vast majority of benefit claims at issue and that Cigna failed to provide fair and full review of the challenged benefit claims. Finally, the district court allegedly erred in denying damages and failing to award attorney's fees to North Cypress.

None of these challenges succeeds. As will be explained, the law of the case did not require the district court on remand to determine the legal correctness of Cigna's policy interpretation, and under *Humble*, a court need not reach legal correctness if the insurer's determination was not an abuse of discretion. *Humble* also moots consideration of the conflicts and inferences of

No. 18-20576

bad faith that North Cypress asserts against Cigna. In evaluating Cigna's plan interpretation, the district court correctly applied this court's previous decision in the instant controversy as well as *Humble*. Consequently, North Cypress's exhaustion argument is moot. Moreover, its procedural challenge to Cigna's review fails for lack of substantiating evidence, which leaves the damages issue moot, too. Based on the correctness of the district court's rulings, North Cypress can hardly establish that it had any right to obtain attorney's fees.

## I. Law of the Case

Reviewing Cigna's disposition of the challenged benefit claims, the district court "skipped the legal correctness analysis" and proceeded to the "functional equivalent of arbitrary and capricious review." According to North Cypress, this procedure violated the law of the case because, in *North Cypress I*, this court allegedly ordered the trial court on remand to decide whether Cigna's plan interpretation was legally correct. In fact, the law of the case stated no such imperative.

In *North Cypress I*, Cigna requested that this court "affirm the grant of summary judgment against North Cypress's benefit underpayment claims on the merits." 781 F.3d at 195. The panel chose instead to "vacate and remand to allow the district court a full opportunity to consider all of North Cypress's claims for underpayment of benefits and its other closely related ERISA claims with a fully developed record." *Id.* at 197. To explain the remand, the *North Cypress I* panel identified "the many issues Cigna asks us to decide." *Id.* at 196. For this reason, the panel stated,

> Analysis of Cigna's plan interpretation proceeds in two steps. The first question is whether Cigna's reading of the plans is "legally correct." . . . On a finding that the plans, read correctly, do *not* condition coverage on collection of coinsurance, the question would be whether Cigna nevertheless had discretion to absolve itself of responsibility for payment of the greater part of thousands of claims. At this stage of the analysis, the inquiry would include

8

among other factors, whether Cigna had a conflict of interest, as well as the "internal consistency of the plan" and "the factual background of the determination and any inferences of lack of good faith."

*Id.* at 195–96 (quoting *Threadgill v. Prudential Secs. Grp., Inc.*, 145 F.3d 286, 293 (5th Cir. 1998)).

This general statement of the law, expressed in terms of the facts of the case, is no mandate at all.  Nor is it a statement of the whole law regarding review of ERISA benefit decisions.  The court's summary omits mention of *Duhon v. Texaco, Inc.,* 15 F.3d 1302, 1307 n.3 (5th Cir. 1994) and *Holland v. International Paper Co. Retirement Plan*, 576 F.3d 240, 246 n.2 (5th Cir. 2009) (cited in *North Cypress I*, 781 F.3d at 195 n.57), in which this court established that a party may skip the legal correctness inquiry and proceed to consider whether the plan administrator abused its discretion, as outlined in *North Cypress I*.  The *North Cypress I* panel did not deny the authority of *Duhon* or of *Holland* (nor could it).

Accordingly, the district court properly relied on *Holland,* as well as on *Humble*, 878 F.3d at 483–84, in skipping the legal correctness analysis.  In so doing, the court did not violate the law of the case and committed no error.

## II.  Conflicts of Interest and Lack of Good Faith

Law of the case aside, North Cypress contends also that the district court erred in its evaluation of the conflicts of interest and inferences of lack of good faith that North Cypress raised.  Under *Humble*, however, the abuse-of-discretion inquiry was obviated by the existence of prior legal authority supporting Cigna's interpretation of identical or nearly identical language concerning insureds' coinsurance obligations.  *Humble* explained that "[o]ther courts have held that, where an administrator's interpretation is supported by prior case law, it cannot be an abuse of discretion—even if the interpretation

is legally incorrect." *Humble,* 878 F.3d at 484. Because, as North Cypress itself has acknowledged, the circumstances of this case match those in *Humble*, Cigna's alleged conflicting interests and lack of good faith are immaterial.[7]

If a benefit claimant (or, as here, assignee) challenges the disposition of a claim, and the court makes no finding of legal correctness to end the inquiry, then it must ordinarily consider whether the plan administrator's interpretation was arbitrary and capricious. *Humble*, 878 F.3d at 483. The inquiry may generally include reviewing whether the plan administrator "had a conflict of interest, as well as the 'internal consistency of the plan' and 'the factual background of the determination and any inferences of lack of good faith.'" *North Cypress I,* 781 F.3d at 195–96 (quoting *Threadgill*, 145 F.3d at 293). Under *Humble*, however, it may not be necessary to review these factors, at least "under the present circumstances," where two other courts "effectively or explicitly concluded that the [insurer's interpretation of the] provision at issue here was legally correct." 878 F.3d at 485.[8]

For some of the benefit decisions in *Humble*, one relevant and longstanding prior case, decided in 1991, was *Kennedy v. Connecticut General Life Insurance Co.*, 924 F.2d 698 (7th Cir. 1991). *Id.* at 485. The *Kennedy* court ruled that Cigna's interpretation of a "nearly-identical" provision as imposing a fee forgiveness restriction was legally correct. *Kennedy,* 924 F.2d at 701. The *Humble* court also relied on the district court's first decision in this case, which although vacated in *North Cypress I,* was controlling during most of the period

---

[7] The district court applied *Humble*, noting it need not decide the abuse of discretion factors, but it went on to reject, based on record evidence, each of North Cypress's complaints concerning Cigna's alleged conflicts of interest, internal inconsistency in the plan, and lack of good faith. We pretermit further discussion of these findings.

[8] The court in *Humble* cautioned that it did not adopt "a bright-line rule because even if a legally incorrect interpretation is supported by prior case law, employing the interpretation could cause a plan administrator to abuse its discretion." 878 F.3d. at 485.

covering Cigna's dealings with Humble Surgical Hospital and had also ruled Cigna's interpretation to be correct. Thus, as in *Humble*, so it must be here: this court must adhere to the same reasoning and result concerning the same policy language. Cigna's interpretation, having relevant legal support, could not in these circumstances be an abuse of discretion.

## III. Applying *Humble*

To avoid the dispositive effect of *Humble*, North Cypress proposes four critiques: *Humble* contradicts *North Cypress I* and lacks authority; *Kennedy*, on which *Humble* relied, is inapplicable to this case; Cigna did not rely on *Kennedy* in this case; and various facts render *Humble* distinguishable. These are meritless.

First, it is simply incorrect to claim that "*Humble* came to a different conclusion than did *N. Cypress* finding that Cigna's Exclusion interpretation is 'legally correct.'" *Humble* came to no such conclusion. Instead, the court "skip[ped]" consideration of the issue because "even if [Cigna's] construction of the plans' exclusionary language was legally incorrect, its interpretation still fell within its broad discretion." *Humble*, 878 F.3d at 484. Moreover, *North Cypress I* made no final determination about the legal correctness of Cigna's interpretation, as it merely "suggested (without deciding) that this reading might be legally incorrect."[9] *Id. Humble* remains binding.

North Cypress contends that here, unlike in *Kennedy*, North Cypress left patients legally responsible for co-payments. True or not, that contention is

---

[9] It stated that "[t]here are strong arguments" for that conclusion, declined to rule for Cigna on the merits of North Cypress's ERISA claims, and vacated the district court's summary judgment on North Cypress's state contract law claims, in which the district court had determined that Cigna's interpretation was legally correct. In vacating that holding, the panel characterized it as "filtered through state contract law and based on a much smaller universe of claims" than would be a final decision on the ERISA claims. 781 F.3d at 196–97.

11

irrelevant for present purposes. *Humble* relied on *Kennedy*, not to determine whether patients actually were responsible for co-payments, but rather to determine whether Cigna reasonably required that patients be legally responsible for co-payments. *Humble*, 878 F.3d at 484–85. As North Cypress admits, the relevant interpretation in this case is the same as the interpretation in *Humble*. *Kennedy* was reasonably invoked in *Humble* in determining whether Cigna's interpretation was an abuse of discretion, and it is reasonably applicable here.

North Cypress counters that, even if *Kennedy* applies to this case, Cigna did not rely on *Kennedy*. Indeed, a series of "facts here not present in *Humble*"[10] constitute Cigna's alleged conflicts of interest and lack of good faith. As previously explained, however, they are immaterial.

Finally, North Cypress does not adequately brief a challenge to the existence of substantial evidence supporting Cigna's decisions.[11] Even if a plan

---

[10] North Cypress alleges that (1) Cigna mobilized a team to pressure North Cypress to join its provider network, (2) this team invented an approach that involved making reduced payment, if any, to North Cypress and convincing plan sponsors to reduce reimbursement of North Cypress, (3) Cigna created the Protocol "exclusively for North Cypress, not relying on *Kennedy*," (4) Cigna repeatedly stated a goal to force North Cypress to the negotiating table to enter an in-network contract, (5) North Cypress reversed its Prompt Pay Discount and billed thousands of patients the full amount of their out-of-network responsibility after the patients failed to pay timely, (6) North Cypress did not commit fraud or provide "kickbacks," and (7) "Cigna used North Cypress as a pretext to plan sponsors for payments based on billed charges from 2007-12 to make millions in additional 'contingency fees.'"

[11] In this case, the district court ruled that substantial evidence supported Cigna's conclusion. North Cypress, in its initial brief, notes as a fact in its "Statement of the Case," that "only the original 27 'modest' surveys were Cigna's foundation to adjudicate 9,921 North Cypress claims as 'fee-forgiving' on a patient responsibility of $100." Also, North Cypress (erroneously) faults the district court for failing to consider whether Cigna had substantial evidence for its decision, and, in the course of arguing about the district court's damages rulings, it notes that the district court's ruling "rel[ied] on . . . the erroneous finding of 'substantial evidence' to support Cigna's actions." At no point in its initial brief, however, does North Cypress provide an argument against the district court's finding of substantial evidence.

No. 18-20576

interpretation is not an abuse of discretion, particular benefit decisions must be supported by substantial evidence. *Humble,* 878 F.3d at 485. With this failure, no grounds remain on which to find that Cigna abused its discretion. North Cypress's ERISA § 502 claims fail.

## IV. Remaining Issues

North Cypress also raised the alleged "futility" of exhausting Cigna's appeal process for denied claims, but this process claim is moot because the administrator's decisions were no abuses of discretion. North Cypress's other process argument on appeal—against summary dismissal of its ERISA § 503 claims for the absence of a "full and fair hearing" of benefit appeals—fails to establish any error of law or genuine dispute of material fact marring the district court's summary judgment. North Cypress additionally persists in asserting some right to receive damages and attorney's fees. Zero damages is, however, the only appropriate measure for zero substantive success in proving the hospital's case. As for attorney's fees, the fact that North Cypress achieved temporary but fleeting success in reversing the district court's initial legal conclusions is necessary but not sufficient for an award where its claims were later totally rejected after trial. *See Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S. Ct. 2149, 2158 (2010).

## CONCLUSION

For the foregoing reasons, the district court's judgment is **AFFIRMED**.

---

An argument not included in a statement of issues nor addressed in the body of the brief must be deemed waived. *United States v. Thames*, 214 F.3d 608, 612 (5th Cir. 2000). North Cypress could not undo this waiver by raising the issue in its reply brief. *Depree v. Saunders*, 588 F.3d 282, 290 (5th Cir. 2009) ("This court will not consider a claim raised for the first time in a reply brief."). Thus, North Cypress waived the issue of whether Cigna had substantial evidence for its decision, and the district court's finding of substantial evidence stands undisputed.